IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

RICKIE L. JACKSON )
)
) Case No. 4:09-cv-00005-DGK
)
Plaintiff, )
) **JURY TRIAL DEMANDED**
vs. )
)
FEDERAL RESERVE BANK OF )
KANSAS CITY

**FIRST AMENDED COMPLAINT**

COMES NOW PLAINTIFF, who files this First Amended Complaint as a matter of course, pursuant to Fed. R. Civ. Pro. Rule 15(a)(1)(A):

**Parties, General Allegations, Jurisdiction and Venue**

1. Plaintiff Rickie L. Jackson is an individual residing in Independence, Missouri. At all relevant times described below, and in particular during his employment with the Federal Reserve Bank of Kansas City, resided in Independence, Missouri.

2. Defendant Federal Reserve Bank of Kansas City does business in Missouri, and maintains an office for the conduct of its ordinary and customary business in Kansas City, Missouri, at One Memorial Drive, The Federal Reserve Bank of Kansas City, with its principal place of business at One Memorial Drive, Kansas City, Missouri. Defendant Federal Reserve Bank is therefore doing business in this judicial district.

3. Defendant, at all times relevant hereto, is and has been an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, as amended; 42 U.S.C. § 2000(e) et seq, and

1

the Americans With Disabilities Act 42 U.S.C. §§ 12101, et seq.

4. Both jurisdiction and venue are proper in this Court because federal questions are involved under Title VII of the Civil Rights Act of 1964, as amended; the Americans With Disabilities Act 42 U.S.C. §§ 12101, et seq; and because the unlawful employment practices and all other transactions, occurrences and violations alleged in this Complaint were committed within this judicial district. Venue is therefore proper in this Court pursuant to the provisions of 42 U.S.C. § 2000e, et seq,, 28 U.S.C. § 1331 (federal question), § 1343 (civil rights) and § 1391.

5. Defendant employs (and at times relevant hereto employed) more than 500 employees.

6. On or about August 5, 2008, plaintiff filed a Charge of Discrimination based on disability, with the Equal Opportunity Employment Commission ("EEOC"). Said Charge of Discrimination was assigned Charge No. 563-2008-01678. The EEOC investigated plaintiff's Charge of Discrimination and issued plaintiff his Notice of Right to Sue on October 8, 2008. On February 17, 2009, plaintiff filed an Additional Charge of an Discrimination based on retaliation, with the MCHR, and received his Notice of Right To Sue on April 23, 2009. Further, said charges of discrimination, and the ensuing investigation and exhaustion of administrative remedies through the EEOC and MCHR, constitute notice under RSMo. 213.211.1.

7. This action has been commenced by the filing of this Amended Complaint within ninety (90) days after plaintiff's receipt of the aforesaid Notices of Right to Sue; therefore, plaintiff has duly met all administrative requirements of Americans with Disabilities Act and Missouri Human Rights Act, as amended.

8. At the time of defendant's unlawful conduct toward plaintiff, and thereafter, defendant

has retained and continues to employ non-disabled persons, in jobs for which plaintiff is and was qualified.

## COUNT I

## Plaintiff's Claims of Disability Discrimination

9. Plaintiff hereby incorporates by reference all prior paragraphs and those that follow as set out herein.

10. At all relevant times, plaintiff has had a physical impairment (high frequency hearing loss) which substantially limits one or more of his major life activities.

11. In particular, plaintiff's physical impairment substantially limits his ability to hear high frequency sounds, including telephone ringers, and other similar sounds.

12. At all times relevant to this action, plaintiff was a qualified individual with a disability within the meaning of that term as utilized in the Americans With Disabilities Act and the regulations administering it, either as an individual with a physical impairment which substantially limits one or more of his major life activities, but who can perform all of the essential functions of his job, or as a person who has a record of such an impairment which has been communicated to defendant, or as a person who is regarded as having such an impairment.

13. Defendant discriminated against plaintiff on the basis of his disability by (a) not making reasonable accommodations to the known physical limitations of an otherwise qualified individual with a disability; (b) subjecting a qualified individual with a disability to different terms conditions and privileges of employment than the terms, conditions and privileges available to non-disabled employees; and (c) coercing, intimidating, threatening and interfering with an individual in his exercise of rights under federal and state law prohibiting discrimination on the basis of a

3

qualified disability, thereby violating 42 U.S.C. § 12101, et seq., the Americans With Disabilities Act, and the Missouri Human Rights Act.

14. Plaintiff Rickie L. Jackson, male, was employed by the Federal Reserve Bank from April 26, 1999 until his termination on December 2, 2008. His last position was as a Senior Security Specialist.

15. During plaintiff's employment with The Federal Reserve Bank of Kansas City, plaintiff performed his job duties in a satisfactory manner.

16. In approximately February, 2008, the Federal Reserve moved into their new building on Pershing Road in Kansas City.

17. The new Federal Reserve building had an entirely new security system, including new phones. These telephones had a high-frequency ring.

18. Due to plaintiff's military service, plaintiff has a high-frequency hearing loss. This disability is well-known to the Defendant as it was noted in his annual fitness exam performed by the physician for the Federal Reserve Bank of Kansas City.

19. On January 22, 2007, plaintiff notified the I.T. Manager of the Defendant, that because of his hearing loss, plaintiff was unable to perform one of the essential functions of a security specialist without an accommodation, answering the telephone. Plaintiff requested that they activate the red light feature of the phone so that it would blink whenever the phone was ringing, thereby notifying plaintiff that it was ringing.

20. Defendant's I.T. manager Jimmy Mizell laughed and told plaintiff that his employer would never pay for this accommodation.

21. Plaintiff then reported to his supervisor, Juan Martinez, that he had made a request

for a light activated ringer because he could not hear the high-pitched telephone ringer. Nothing was done. Around the same time it was announced that the security staff would soon be required to wear "ear bud" receivers.

22. Plaintiff again wrote his supervisor on 3/19/2008 advising him of his hearing disability and resultant inability to hear the telephone ringer. He reiterated his request for a light notification on the telephone.

23. Plaintiff asked how the "ear buds" would work with his new hearing aids. He had advised Manager Goetz in February that he was getting fitted for hearing aids.

24. One day after asking about the integration of hearing aids with the "ear buds" plaintiff was singled out of a group having lunch together by Manager Goetz and Coleman, and told to leave his lunch and go shut a door. When he got up to go close the door, Coleman told him he would do it instead.

25. Because of a staff shortage of security specialists, plaintiff and other security specialists were often asked to work during their lunch. As a result they took their food to their posts, despite a policy that prohibited eating on post.

26. One week after the incident in the lunchroom, plaintiff was suspended for two days — without pay — for insubordination and for "eating on post". When he returned, Mr. Jackson observed other employees "eating on post" without any negative outcome. Mr. Jackson told those employees that he was suspended for "eating on post," and they continued to eat without recrimination. Manager Juan Martinez, during an employee meeting, told everyone he knew that they all ate on post, but he discouraged it for the future.

27. Within a month Mr. Jackson was falsely accused of inappropriate behavior

complained of by a female co-worker, but later told by the employer that complainant did not wish to make a "complaint".

28. Plaintiff filed a complaint with the EEOC on August 8, 2008.

29. In 2008, Plaintiff received a rating of "needs improvement," on his first negative employment evaluation in the history of his employment with the Federal Reserve Bank of Kansas City.

30. On October 8, Mr. Jackson was contacted by Human Resources concerning his Human Rights complaint. Plaintiff reiterated his request for an accommodation. Twenty-two days later, on October 30th, the intercom system was modified to meet his request for an accommodation.

31. Defendant's actions, after plaintiff requested accommodations, were continuously discriminatory, hostile, harassing, retaliatory, outrageous, arbitrary and capricious. Such actions constitute a disparity in treatment toward plaintiff and unlawful employment practices because of his disability and request for an accommodation, in violation of Americans with Disabilities Act, as amended, and the Missouri Human Rights Act.

32. The actions taken by defendant were willful, intentional, malicious or in reckless.

33. As a direct and proximate result of defendant's unlawful acts, plaintiff has suffered economic loss in the form of lost wages, lost benefits, harm to plaintiff's possibilities for career advancement, lost pension and other fringe benefits. He has also suffered non-pecuniary compensatory damages in the form of embarrassment, humiliation, loss of dignity, mental anguish, anxiety and inconvenience, all in an amount which cannot be ascertained precisely at this time, but will be established in the course of discovery and trial. Plaintiff seeks past and future monetary losses and damages, plus prejudgment interest in an amount in excess of $500,000 exclusive of

interest and costs.

34. Plaintiff also is entitled to non-pecuniary compensatory damages in the amount of $500,000 or such lesser or greater amount as the jury finds reasonable for his pain and suffering, loss of enjoyment of life, humiliation, mental distress and anxiety, and inconvenience.

35. Plaintiff is also entitled to punitive damages in an amount a jury finds reasonable for defendant's willful, wanton or reckless indifference to plaintiff's civil rights.

**WHEREFORE,** plaintiff prays the following: judgment in his favor, and against defendant, (1) awarding him back pay in an amount yet to be determined; (2) awarding him front pay in an amount yet to be determined; (3) awarding him lost fringe benefits in an amount yet to be determined; (4) awarding him compensation for mental anguish, emotional distress, loss of enjoyment of life, and other categories of actual damage, each in an amount yet to be determined but not less than Seventy-Five Thousand Dollars ($75,000.00); (5) awarding him reasonable costs, including expenses and attorneys fees; and (6) awarding him such other and further relief as the Court deems just and proper, including a monetary award sufficient to offset any adverse tax consequences of any award to plaintiff.

## COUNT III

### Retaliation

36. Plaintiff hereby incorporates by reference all previous allegations in Count I of this Complaint.

37. The events described in Count I concerning the suspensions and negative employment evaluation given to plaintiff after he made his requests for accommodation were retaliatory and in response to his requests for accommodation and for filing an EEOC Charge.

38. On November 26, plaintiff was in working as the Charge Officer of the Security Staff and received a call from another security specialist he was supervising, with a request for access of a family that included local persons with local identification, and family members who were not local and did not have local identification. plaintiff allowed access for these individuals to the museum only. As a result, plaintiff was terminated for allowing access to persons without proper identification. The reason for termination was a pretext to discriminate against plaintiff.

39. Other security specialists in the same supervisory role had made the exact same decision as plaintiff, allowing persons without ID who were family of persons with local ID's, access to the museum at the Federal Reserve. They were not disciplined or terminated.

40. The reason for termination was a pretext to retaliate against plaintiff for his earlier complaints of discrimination and requests for accommodation of his disability.

41. Defendant's termination of Mr. Jackson for making a decision commonly made by other supervisors in his position, was arbitrary, capricious, retaliatory and discriminatory.

42. Defendant's retaliatory actions have damaged plaintiff monetarily in the amount of lost income and benefits, mental anguish, embarrassment and humiliation, career disruption, caused by defendant's discriminatory and retaliatory treatment of plaintiff in an amount in excess of $75,000.

43. Plaintiff also is entitled to punitive damages for defendant's willful retaliation to deter defendants from like conduct.

**WHEREFORE,** plaintiff prays the following: judgment in his favor, and against defendant, (1) awarding him back pay in an amount yet to be determined; (2) awarding him front pay in an amount yet to be determined; (3) awarding him lost fringe benefits in an amount yet to be

determined; (4) awarding him compensation for mental anguish, emotional distress, loss of enjoyment of life, and other categories of actual damage, each in an amount yet to be determined but not less than Seventy-Five Thousand Dollars ($75,000.00); (5) awarding him reasonable costs, including expenses and attorneys fees; and (6) awarding him such other and further relief as the Court deems just and proper, including a monetary award sufficient to offset any adverse tax consequences of any award to plaintiff.

THE POPHAM LAW FIRM, P.C.

By: /s/ Bert S. Braud
   BERT S. BRAUD - Bar No. 14223
712 Broadway, Suite 100
Kansas City, Missouri 64105
(816) 221-2288
Telecopier No. (816) 221-3999
bbraud@pophamlaw.com

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all issues so triable as a matter of right.

/s/ Bert S. Braud

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the place where this case should be tried.

/s/ Bert S. Braud

## CERTIFICATE OF SERVICE

The undersigned counsel for Plaintiff hereby certifies that the above styled First Amended Complaint was served on all counsel of record via the ECF system this 19th day of May, 2009.

/s/ Bert S. Braud